1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

9

10

11

12

13

14

15

16

| | |
|---|---|
| BRET E. BAILEY, | ) |
| | ) No. CV-09-199-JPH |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER GRANTING PLAINTIFF'S |
| | ) MOTION FOR SUMMARY |
| MICHAEL J. ASTRUE, | ) JUDGMENT AND REMANDING FOR |
| Commissioner of Social Security, | ) ADDITIONAL PROCEEDINGS |
| | ) PURSUANT TO SENTENCE FOUR 42 |
| Defendant. | ) U.S.C. § 405(g) |
| | ) |
| | ) |
| | ) |

17

18

19

20

21

22

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 16.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Terrye Erin Shea represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** defendant's Motion for Summary Judgment and **GRANTS** plaintiff's Motion for Summary Judgment and remands the matter to the Commissioner for additional proceedings.

23

**JURISDICTION**

24

25

26

27

28

Plaintiff Bret E. Bailey  (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on November 7, 2006. (Tr. 127-33.)  Plaintiff alleged an onset date of February 2, 1995. (Tr. 127, 130.)  Benefits were denied initially and on reconsideration. (Tr. 99, 104.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ R.J. Chestnut on September 11, 2008.  (Tr. 46-94.)  Plaintiff was represented by counsel and testified at the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -1

1   hearing. (Tr. 50-83.) Vocational expert Tom Moreland also testified. (Tr. 83-94.) On October 29,

2   2008, the ALJ issued a written decision denying benefits. (Tr. 29-43.) The Appeals Council denied

3   review (Tr. 1) and the matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

5   The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and

6   the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

7   Plaintiff was 48 years old at the time of the hearing. (Tr. 50.) He attended school for 16 years

8   but is one five-credit class short of a bachelor's degree. (Tr. 55.) He was working toward a double major

9   in finance and economics. (Tr. 55.) Plaintiff has work experience as a mortgage broker, a lab technician

10  at a hospital, a self-employed realtor, and a loan processor. Plaintiff has also worked in a printing

11  department on printing machines, in customer service at a bank call center, and for the Social Security

12  Administration as a claims representative. (Tr. 58-66.) Plaintiff testified he stopped working due to a

13  to a combination of factors resulting from a November 2006 heart attack, including pain, difficulty

14  concentrating, preoccupation with his health, inability to manage the stress, and slower pace. (Tr. 57.)

15   The problems that keep him from working are pain and fatigue. (Tr. 67.) Plaintiff's pain is primarily

16  back pain radiating into his hips and thighs. (Tr. 68.) He testified his medication makes him unreliable,

17  affects his short term memory and leaves him in a haze. (Tr. 68, 70.) He has problems with coordination

18  and mental confusion, anxiety and depression. (Tr. 70-71.) He prefers to avoid people, is uncomfortable

19  in social settings, and has trouble making eye contact. (Tr. 73.)

**STANDARD OF REVIEW**

21  Congress has provided a limited scope of judicial review of a Commissioner's decision. 42

22  U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the

23  determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,*

24  760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The

25  [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are

26  supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42

27  U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

28  1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -2

1   601-602 (9ᵗʰ Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9ᵗʰ

2   Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate

3   to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch

4   inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be

5   upheld.  *Mark v. Celebrezze,* 348 F.2d 289, 293 (9ᵗʰ Cir. 1965).  On review, the Court considers the

6   record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v.*

7   *Sullivan*, 877 F.2d 20, 22 (9ᵗʰ Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9ᵗʰ Cir. 1980)).

8       It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson*, 402

9   U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its

10  judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

11  (9ᵗʰ Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the

12  proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v.*

13  *Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9ᵗʰ Cir. 1988).  Thus, if there is substantial

14  evidence to support the administrative findings, or if there is conflicting evidence that will support a

15  finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v.*

16  *Bowen*, 812 F.2d 1226, 1229-30 (9ᵗʰ Cir. 1987).

17                                    **SEQUENTIAL PROCESS**

18      The Social Security Act (the "Act") defines "disability" as the "inability to engage in any

19  substantial gainful activity by reason of any medically determinable physical or mental impairment which

20  can be expected to result in death or which has lasted or can be expected to last for a continuous period

21  of not less than twelve months."  42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A).  The Act also provides

22  that a plaintiff shall be determined to be under a disability only if his impairments are of such severity

23  that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education

24  and work experiences, engage in any other substantial gainful work which exists in the national

25  economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both

26  medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9ᵗʰ Cir. 2001).

27      The Commissioner has established a five-step sequential evaluation process for determining

28  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he or she is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -3

1  engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities,

2  benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

3      If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step

4  two and determines whether the claimant has a medically severe impairment or combination of

5  impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe

6  impairment or combination of impairments, the disability claim is denied.

7      If the impairment is severe, the evaluation proceeds to the third step, which compares the

8  claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be

9  so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii);

10  20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the

11  claimant is conclusively presumed to be disabled.

12      If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to

13  the fourth step, which determines whether the impairment prevents the claimant from performing work

14  he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant

15  is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's residual

16  functional capacity ("RFC") assessment is considered.

17      If the claimant cannot perform this work, the fifth and final step in the process determines

18  whether the claimant is able to perform other work in the national economy in view of his or her residual

19  functional capacity and age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

20  416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

21      The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement

22  to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d

23  1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or

24  mental impairment prevents him from engaging in his or her previous occupation.  The burden then

25  shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial

26  gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant

27  can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -4

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has engaged in substantial gainful activity since February 2, 1995, the application date. (Tr. 31.)  The ALJ found plaintiff had substantial gainful activity for most if not all of the period before June 27, 2006. (Tr. 32.) Work from June 27 to November 2006 was characterized as an unsuccessful work attempt. (Tr. 32.)  At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease/arthritis, cardiac impairment, asthma, pain disorder, anxiety and depression.  (Tr. 38.)  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 18.)  The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can stand and/or walk 6 hours in an 8-hour day.  He can sit 6 hours in an 8-hour day.  He requires a sit/stand option to change position every hour.  He can occasionally engage in stooping and crouching. He should avoid climbing ropes, ladders or scaffolds.  He should avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, etc, and hazards such as dangerous machinery and heights.  He is cognitively intact and capable of simple and well-learned tasks.  His attention, concentration, persistence and pace would be slowed episodically by his psychological symptoms.  He would do best away from the demands of the general public.  He may need additional time to adjust to work setting changes.

(Tr. 39.)  At step four, the ALJ found plaintiff is capable of performing past relevant work as a collator, data entry clerk, deliverer, and printer machine operator.  (Tr. 42.)  Thus, the ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, from February 2, 1995 through the date of the decision.

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Specifically, plaintiff asserts the ALJ erred in considering the medical and psychological opinion evidence.  (Ct. Rec. 14 at 13-20.)  Defendant argues the ALJ properly assessed the medical source evidence.  (Ct. Rec. 17 at 5-31.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -5

1

2                                          **DISCUSSION**

3    **1.      Dr. Dalley**

4              Plaintiff argues the ALJ improperly rejected the opinions of Dr. Dalley, an examining

5    psychologist, in favor of the opinion of Dr. Gentile, a consulting psychologist. (Ct. Rec. 14 at 17-

6    18.)  Dr. Dalley and his colleagues examined plaintiff three times from November 2006 to March

7    2008.  (Tr. 301-09, 423-31, 477-91.)   After the first examination on November 14, 2006, Dr. Dalley

8    diagnosed pain disorder associated with both psychological factors and a general medical condition

9    and opioid dependence.  (Tr. 304.)  Dr. Dalley completed a DSHS psychological/psychiatric

10   evaluation form and assessed no limitations based on cognitive factors, but identified moderate or

11   marked limitations for all social factors.  (Tr. 308.)  In particular, Dr. Dalley assessed marked

12   limitations in plaintiff's ability to interact appropriately with public contacts and in the ability to

13   respond appropriately to and tolerate the pressures and expectations of a normal work setting. (Tr.

14   308.)

15             In a second report dated April 27, 2007, Dr. Dalley diagnosed pain disorder associated with

16   both psychological factors and a general medical condition, panic disorder without agoraphobia, and

17   opioid dependence.  (Tr. 423-27.)  He again assessed no cognitive limitations and five moderate or

18   marked social limitations.  (Tr. 430.)   Dr. Dalley assessed marked limitations in the ability to

19   interact appropriately in public contacts, the ability to respond appropriately to and tolerate the

20   pressures and expectations of a normal work setting, and the ability to control physical or motor

21   movements and maintain appropriate behavior.  (Tr. 430.)  Dr. Dalley noted that plaintiff's anxiety

22   and panic attacks appeared to have increased significantly since the last evaluation.  (Tr. 426.)

23             A third report from Dr. Dalley dated March 17, 2008 includes diagnoses of pain disorder

24   associated with both psychological factors and a general medical condition; major depressive

25   disorder, recurrent, moderate; panic disorder without agoraphobia; and opioid dependence.  (Tr. 481-

26   87.)  Assessed limitations include a severe limitation on the ability to respond appropriately to and

27   tolerate the pressures and expectations of a normal work setting, marked limitations on the ability to

28   interact appropriately in public contacts and ability to control physical or motor movements and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -6

1    maintain appropriate behavior, and three additional moderate limitations.

2         Plaintiff argues the ALJ improperly relied on the opinion of Dr. Gentile, a consulting

3    psychologist who did not treat or examine plaintiff.  (Ct. Rec. 14 at 17.)  Dr. Gentile completed

4    Psychiatric Review Technique and Mental Residual Functional Capacity forms dated July 12, 2007.

5    She acknowledged diagnoses of panic disorder without agoraphobia, pain disorder associated with

6    both psychological and general medical condition, and opioid dependence.  (Tr. 447-56.)  Dr. Gentile

7    assessed no marked limitations and four moderate limitations affecting: the ability to maintain

8    attention and concentration for extended periods; the ability to complete a normal workday and

9    workweek without interruptions from psychologically based symptoms and to perform at a consistent

10   pace without an unreasonable number of rest periods; the ability to interact appropriately with the

11   general public; and the ability to respond appropriately to changes in the work setting.  (Tr. 461-62.)

12        In evaluating medical or psychological evidence, a treating or examining physician's opinion

13   is entitled to more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d

14   587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or

15   examining  physician's opinions are not contradicted, they can be rejected only with clear and

16   convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for

17   "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews*

18   *v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting

19   medical evidence, the absence of regular medical treatment during the alleged period of disability,

20   and the lack of medical support for doctors' reports based substantially on a claimant's subjective

21   complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's

22   opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995);

23   *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

24        The ALJ discussed Dr. Dalley's opinions, but did not specifically accept or reject them.  (Tr.

25   34-38, 42.)   The ALJ indicated he took into account several observations about Dr. Dalley's report in

26   formulating the residual functional capacity finding.  (Tr. 42.)  While the ALJ did not specifically

27   reject Dr. Dalley's opinion, he effectively did so by adopting the less restrictive limitations assessed

28   by Dr. Gentile in formulating plaintiff's RFC.  As an examining physician, Dr. Dalley's opinions

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -7

1  were entitled to greater weight than Dr. Gentile's opinion.  Thus, the ALJ was required to provide

2  specific, legitimate reasons for rejecting Dr. Dalley's opinions.

3      The first reason given by the ALJ in rejecting Dr. Dalley's opinions is that Dr. Dalley's

4  second evaluation indicates plaintiff reported severe panic attacks and hallucinations, but other

5  records do not include the same report.  (Tr. 42.)  However, each of Dr. Dalley's reports mentions

6  panic attacks.  The first report indicates that plaintiff had panic attacks so severe he was unable to

7  control his symptoms and ended up at the hospital.  (Tr. 302.)  The second report mentions severe

8  panic attacks that keep plaintiff from driving, and notes that plaintiff panics whenever he reads or

9  sees something that reminds him of his heart attack.  (Tr. 423.)  The third report notes plaintiff

10 reported a number of symptoms of panic which occur both situationally and out of the blue at least

11 once per month.  (Tr.  481.)[1]  (Tr. 21.)  Dr. Gentile acknowledged panic disorder as a diagnosis.  (Tr.

12 452, 459.)  While the ALJ is correct that Dr. Dalley indicated plaintiff reported hallucinations in

13 April 2007 and there may be no other reference to hallucinations in the record, it does not appear that

14 Dr. Dalley based any of his findings, diagnoses, or assessed limitations on a single mention of

15 auditory hallucinations.  (Tr. 423.)  The lone reference to hallucinations may reflect somewhat on

16 plaintiff's credibility, but it does not justify rejection of Dr. Dalley's opinion.  Thus, substantial

17 evidence does not support the ALJ's first reason for rejecting Dr. Dalley's April 2007 opinion.

18     Second, the ALJ noted that plaintiff was in the middle of narcotic tapering at the time the

19 second evaluation.  (Tr. 42.)  However, Dr. Dalley specifically noted, "Current anxiety symptoms are

20

21     [1]The Appeals Council added to the record a DSHS psychological/psychiatric evaluation form

22 completed by Dr. Debra Brown on April 3, 2009.    (Tr. 4, 586-89.)    The form references an

23 accompanying narrative report, but the narrative is not part of the record.  Dr. Brown's April 3, 2009

24 report is properly considered by this court because the Appeals Council considered it in denying

25 Plaintiff's request for review.  *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000)*; Ramirez v.*

26 *Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).    The record is unclear as to the Appeals Council's

27 consideration of a narrative report and DSHS evaluation form completed on August 25, 2008 submitted

28 to the Appeals Council by plaintiff's counsel after the ALJ's decision.  (Tr. 9, 11-24.)  The August 25,

2008 report indicates plaintiff reported panic attacks three to four times per month.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -8

1  not believed to be directly related to the effects of his narcotic pain medications." (Tr. 426.)  Dr.

2  Dalley was aware that plaintiff had decreased the amount of narcotics he had been taking at the time

3  of the report. (Tr. 424.)  The ALJ seems to suggest, without citing any evidence in the record, that

4  plaintiff's symptoms were exaggerated or less reliable because of the narcotics taper, and that

5  therefore Dr. Dalley's assessment is not reliable.  This is conclusion beyond the scope of the ALJ's

6  expertise.  *See Nguyen v. Chater*,172 F.3d 31, 35 (1st Cir.1999) (ALJ is not at liberty to ignore

7  medical evidence or substitute his own views for uncontroverted medical opinion); *Balsamo v.*

8  *Chater*, 142 F.3d 75, 81 (2nd Cir. 1998) (ALJ is free to choose between properly submitted medical

9  opinions but is not free to set his own expertise against that of a physician); *Rohan v. Chater*, 98 F.3d

10  966, 970 (7th Cir.1996) (ALJ must not succumb to the temptation to play doctor and make

11  independent medical findings).  Substantial evidence does not support the ALJ's reasoning, and the

12  ALJ erred in rejecting Dr. Dalley's second report.

13        With respect to Dr. Dalley's third report dated March 17 2008, the ALJ suggests an

14  inconsistency in Dr. Dalley's findings and conclusions.  A medical opinion may be rejected by the

15  ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray v. Comm'r Soc.*

16  *Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957.  The ALJ  pointed out

17  that Dr. Dalley's third assessment included moderate limitations in cognitive factors, "yet the ALJ

18  notes that the claimant's overall cognitive functioning had not declined, as was reported in [Dr.

19  Dalley's] own narrative notes . . . " (Tr. 42.)  Dr. Dalley's March 2008 assessment included one

20  moderate limitation on the ability to exercise judgment and make decisions, which is listed as a

21  cognitive factor on the DSHS evaluation form.  (Tr. 479.)  However, Dr. Dalley also commented

22  directly beneath the limitation, "Features of the client's mood and anxiety disorders may affect some

23  cognitive factors."  (Tr. 479.)  Furthermore, Dr. Dalley's conclusion that plaintiff's ability to exercise

24  judgment and make decisions is impaired is supported by the results of the MMPI-II which indicate

25  plaintiff has the personality profile of someone who is "frequently tense, anxious, depressed and

26  indecisive."  (Tr. 483.)

27        As the ALJ also noted, Dr. Dalley's third assessment indicated it was unlikely that plaintiff's

28  intellectual ability negatively affected his ability to seek and maintain employment; rather, the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -9

1    features of plaintiff's pain and anxiety disorder would affect plaintiff's ability to tolerate the task

2    demands, social expectations, and social pressures of a normal work environment. (Tr. 42, 486.)

3    This is not inconsistent with the moderate cognitive limitation assessed by Dr. Dalley regarding the

4    ability to exercise judgment and make decisions because the ability to make decisions is a

5    characteristic distinct from intellectual ability. Indeed, Dr. Dalley specifically noted that plaintiff's

6    anxiety and mood disorders cause the assessed cognitive limitation, not a decline in plaintiff's

7    intellectual functioning. (Tr. 479.) Thus, this reasoning is not supported by substantial evidence and

8    does not support the rejection of Dr. Dalley's opinion

9         Lastly, the ALJ noted that plaintiff was still undergoing narcotic tapering at the time of the

10   March 2008 evaluation. (Tr. 42.) As discussed above, Dr. Dalley was aware of plaintiff's narcotics

11   regimen and presumably took the effects of plaintiff's narcotics prescriptions into account in making

12   his assessment. (Tr. 481-82.) Dr. Dalley advised continued monitoring of plaintiff's condition and

13   medications. (Tr. 486.) Thus, Dr. Dalley's opinion appears to take into account the effects of

14   plaintiff's treatment with narcotic pain medication.

15        The ALJ cites an note from plaintiff's treating physician, Dr. Bingham, in support of the

16   conclusion that plaintiff's narcotics use affected Dr. Dalley's opinion.   The ALJ's findings will be

17   upheld "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of Soc.*

18   *Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). In a note dated April 22, 2008, Dr. Bingham

19   indicated plaintiff reported "recent acute back injury and some confusion regarding his OxyContin

20   taper." (Tr. 493.) Dr. Bingham's note was written more than a month after Dr. Dalley examined

21   plaintiff. There is no evidence indicating when the back injury occurred, how long plaintiff had been

22   confused about the OxyContin taper or, most importantly, how it had affected him. In this case, the

23   ALJ's inference that plaintiff's confusion about the OxyContin taper makes Dr. Dalley's report

24   unreliable is not reasonably supported by the limited evidence available. The ALJ's conclusion that

25   plaintiff's attempts to reduce narcotics use somehow exaggerated or made Dr. Dalley's report

26   inaccurate or of less weight is not a specific, legitimate reason supported by substantial evidence.

27        The ALJ failed to properly reject Dr. Dalley's opinions, instead relying on the opinion of a

28   non-treating, non-examining advisor. The opinion of a non-examining physician may be accepted as

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -10

substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester*, 81 F.3d at 830-31.  Case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.  In this case, the ALJ did not discuss Dr. Gentile's report with any specificity or cite any other psychological evidence or reasoning justifying adoption of the consulting psychologist's opinion over the opinion of an examining psychologist.  Thus, the ALJ did not adequately justify rejection of Dr. Dalley's opinion and the ALJ therefore erred.

**2.    Ms. DesChane**

Plaintiff argues the ALJ did not provide adequate reasons for rejecting the opinion of treating therapist Monique DesChane, MS, CRC.  (Ct. Rec. 14 at 18.)  Ms. DesChane prepared a report dated September 8, 2008 indicating she had seen plaintiff for 34 weekly individual therapy sessions from June 2007 to September 2008. (Tr. 584.)  She diagnosed major depressive disorder, recurrent, moderate; panic disorder without agoraphobia; and posttraumatic stress disorder (PTSD).  (Tr. 584.) Ms. DesChane opined that plaintiff is significantly impaired and unable to manage his mental health issues outside a therapeutic setting.  (Tr. 584.)  The ALJ rejected Ms. DesChane's opinion.

In a disability proceeding, the ALJ must consider the opinions of acceptable medical sources. 20 C.F.R. §§ 404.1527(d), 416.927(d); S.S.R. 96-2p; S.S.R. 96-6p.  Acceptable medical sources include licensed physicians and psychologists.[2]  20 C.F.R. §§ 404.1513(a), 416.913(a).   In addition to evidence from acceptable medical sources, the ALJ may also use evidence from "other sources" including nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).

Social Security Ruling 06-3p summarizes regulations providing that only an acceptable medical source can: (1) establish the existence of a medically determinable impairment; (2) provide a

---

[2]Other acceptable medical sources are licensed podiatrists and optometrists and qualified speech-language pathologists, in their respective areas of specialty only. 20 C.F.R. §§ 404.1513(a), 416.913.(a).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -11

1    medical opinion; and (3) be considered a treating source.  Evidence from other sources can be used to

2    determine the severity of an impairment and how it affects the ability to work.  S.S.R. 06-3p; 20

3    C.F.R. §§ 404.1513(d), 416.913(d).  "Information from other sources cannot establish the existence

4    of a medically determinable impairment. . . . However, information from 'other sources' may be

5    based on special knowledge of the individual and may provide insight into the severity of the

6    impairment(s) and how it affects the individual's ability to function."  S.S.R. 06-3p.

7        In evaluating the evidence, the ALJ should give more weight to the opinion of an acceptable

8    medical source than that of an "other source."  20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74

9    F.3d 967, 970-71 (9th Cir. 1996).  An ALJ must give reasons germane to "other source" testimony

10   before discounting it.  *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

11       In this case, Ms. DesChane specifically opined as to how plaintiff's mental impairment affects

12   his ability to work.  (Tr. 584.)  Ms. DesChane said, "Mr. Bailey's mental health issues impair his

13   ability to function in a productive way and at times affect his ability to complete even activities of

14   daily living, and certainly affect his ability to sustain employment on a continuous basis."  (Tr. 584.)

15   Ms. DesChane is an "other source," so the ALJ was required to provide germane reasons for rejecting

16   her opinion.

17       The ALJ cited two reasons for rejecting Ms. DesChane's opinion.  First, the ALJ gave no

18   weight to Ms. DesChane "in light of the fact that she is not a psychologist."  (Tr. 42.)     This is not an

19   acceptable or germane reason for rejecting Ms. DesChane's opinion.  The ALJ is required to

20   "consider observations by non-medical sources as to how an impairment affects a claimant's ability

21   to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  By definition, an "other source" is

22   not a psychologist.  Although an "other source" opinion may be entitled to less weight, that does not

23   mean it is entitled to no weight.  As a result, the ALJ's first reason for rejecting Ms. DesChane's

24   opinion is erroneous.

25       The ALJ also rejected Ms. DesChane's opinion because "her opinion appears to be based on

26   the claimant's subjective complaints, and he is not entirely credible."  (Tr. 42.)  A physician's

27   opinion may be rejected if it is based on a claimant's subjective complaints which were properly

28   discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -12

While the ALJ's negative credibility finding was not challenged by plaintiff and appears to be

supported by substantial evidence, there is no evidence that Ms. DesChane's opinion is based entirely

on plaintiff's subjective complaints. The record does not include Ms. DesChane's treatment notes or

otherwise describe with specificity how she arrived at her opinion. It is reasonable to infer that after

34 treatment visits, Ms. DesChane's opinion was formed at least in part based on personal

observations and interviews, and perhaps other factors as well. Substantial evidence does not support

the ALJ's assertion that Ms. DesChane's opinion is based only on plaintiff's subjective complaints.

The ALJ failed to cite a germane reason supported by substantial evidence for rejecting Ms.

DesChane's opinion, and, as a result, the ALJ erred.

**3.     Dr. Bingham**

Plaintiff argues the ALJ did not set forth specific and legitimate reasons supported by

substantial evidence for rejecting the opinion of Dr. Bingham, a treating physician. Dr. Bingham has

been plaintiff's treating physician for more than 10 years. (Tr. 316.) He indicated that plaintiff's

depression and anxiety created a marked limitation in plaintiff's ability to perform one or more basic

work-related activities, and that plaintiff's chronic pain management and chronic lower back pain

may create a moderate or significant interference with the ability to perform one or more basic work-

related activities. (Tr. 315.) Dr. Bingham opined that plaintiff is limited to work that is "sedentary at

best." Dr. Bingham also stated, "A combination of physical and psychological rehab will be

necessary before patient will be able to pursue re-training and re-employment." (Tr. 316.)

The ALJ rejected Dr. Bingham's opinion for two reasons. First, the ALJ noted that there are

"no indications that Dr. Bingham performed anything more than cursory physical examinations."

(Tr. 41.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies,

or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.

2009); *Thomas*, 278 F.3d at 957. During plaintiff's June 2006 hospital stay, Dr. Bingham was

directly involved with plaintiff's care. (Tr. 225-26.) Plaintiff had consults with specialists in

rheumatology, critical care, cardiology, electrophysiology and neurology, which involved a number

of objective tests. (Tr. 228-41.) Dr. Bingham ordered MRIs in March and August 2006 and

reviewed an updated cardiology report in November 2006. (Tr. 392, 396, 318.) When plaintiff

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -13

complained of arthralgias involving hands, knees and swelling, Dr. Bingham recorded results of a complete physical exam. (Tr. 439.) Many of plaintiff's visits to Dr. Bingham were for medication management. (Eg., Tr. 371, 373, 378.)  Dr. Bingham initiated a number of evaluations by specialists to try to identify the source of plaintiff's pain complaints, including consultations with specialists in rheumatology, electrophysiology, gastroenterology and hepatology, respiratory problems and cardiology were ordered. (Tr. 528, 541, 542, 554.)  The ALJ's implication that Dr. Bingham's opinion was not based on clinical evidence is not accurate, thus the first reason for rejecting the opinion is not supported by substantial evidence.

Second, the ALJ rejected Dr. Bingham's opinion "in light of his sub-standard treatment of the claimant's pain complaints." The ALJ pointed out that Dr. Bingham did not recommend any treatment other than narcotic pain medication which, according to the ALJ, would have contributed to memory dysfunction, balance and equilibrium, and deconditioning/easy fatiguability. (Tr. 41.) The ALJ seems to suggest that the narcotic regimen prescribed by Dr. Bingham's was below the standard of care for physicians. As discussed above, it is not the ALJ's place to substitute his judgment for the judgment of a physician. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Numerous other physicians reviewed plaintiff's medical records and consulted with Dr. Bingham regarding plaintiff's diagnoses, medications, and treatment and, while some mention was made of high dosage of narcotics, no physician suggested Dr. Bingham's treatment was incorrect, inappropriate or "substandard." (Tr. 211, 222, 228, 232, 234, 238, 245, 361, 528, 538, 541, 542, 545, 559.)  Additionally, Dr. Bingham encourage plaintiff to get counseling and ruled out surgery as other treatment options. (Tr. 386, 388.)

The record is also replete with Dr. Bingham's attempts to reduce plaintiff's dependence on narcotics. The first evidence from Dr. Bingham in the record dated January 11, 2005 indicates Dr. Bingham informed plaintiff he was taking more than the recommended amount of hydrocodone. (Tr. 390.) Dr. Bingham told plaintiff he was going through oxycodone faster than he would like in December 2005, and indicated he wanted plaintiff to consult with a psychiatrist regarding other options for treatment and pharmacologic consultation. (Tr. 378.)  In April 2006, Dr. Bingham noted plaintiff was still using too much OxyContin and after consulting with another physician he wanted

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -14

1   to start tapering. (Tr. 371.)  In August 2006, Dr. Bingham told plaintiff his accelerated use of

2   narcotic pain relievers was unacceptable. (Tr. 335.)  In May 2007, Dr. Bingham noted fentanyl

3   patches were not working as part of the narcotics taper.  (Tr. 433.)  By early 2008, plaintiff was "so

4   far so good" with narcotic withdrawal and was doing quite well.  (Tr. 496.)  There is no evidence in

5   the record, let alone substantial evidence, that Dr. Bingham's treatment was substandard.  This reason

6   is vague and unsupported by the evidence and does not constitute a specific, legitimate reason for

7   rejecting Dr. Bingham's opinion.

8   **4.     Remedy**

9        Plaintiff argues the opinions of Dr. Dalley, Ms. DesChane, and Dr. Bingham should be

10  credited.  There are two remedies where the ALJ fails to provide adequate reasons for rejecting the

11  opinions of a treating or examining physician.  The general rule, found in the *Lester* line of cases, is

12  that "we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996);

13  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

14  1989).  Another approach is found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), which

15  holds a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons

16  for disregarding the opinion. *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court

17  has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and

18  other issues).  Where evidence has been identified that may be a basis for a finding, but the findings

19  are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir.

20  1990) (citing *McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).   In this case,

21  the evidence does not clearly indicate that plaintiff is disabled.  Remand is appropriate so the ALJ

22  can reevaluate the medical and psychological evidence and, if appropriate, provide the requisite

23  specific and legitimate or germane reasons for disregarding the opinions

24

25                                    **CONCLUSION**

26       The ALJ's decision is not supported by substantial evidence and free of legal error.  A remand

27  is necessary for reevaluation of the opinion evidence.  The ALJ should also consider the reports of

28  Dr. Debra Brown which are part of the record on remand.  The opinion of a medical or psychological

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -15

1  expert may be helpful.

2      Accordingly,

3      **IT IS ORDERED:**

4      1.      Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED**.  The matter is

5  remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C.

6  405(g).

7      2.       Defendant's Motion for Summary Judgment **(Ct. Rec. 16 )** is **DENIED**.

8      3.      An application for attorney fees may be filed by separate motion.

9      The District Court Executive is directed to file this Order and provide a copy to counsel for

10  plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

11      DATED June 30, 2010.

12

13                           _____S/ JAMES P. HUTTON_____
                            UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -16